**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAKE SHACK ENTERPRISES, LLC and SSE IP, LLC, | Case No. |
| *Plaintiffs,* | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BRAND DESIGN COMPANY, INC. d/b/a HOUSE INDUSTRIES, | |
| *Defendant.* | |

Plaintiffs Shake Shack Enterprises, LLC and SSE IP, LLC (together, "Shake Shack"), by their undersigned attorneys, bring this action against Brand Design Company, Inc. d/b/a House Industries ("House") and allege as follows, upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters:

**NATURE OF THE ACTION**

1. House, a so-called "font foundry," has leveled unfounded demands, threats, and accusations against Shake Shack, claiming that the SHAKE SHACK logo infringes House's non-existent rights in the logo's typeface. Shake Shack's logo is a bespoke design created expressly for Shake Shack by an internationally renowned graphic design firm. Shake Shack has owned and used its logo and signage openly and continuously since 2004 as Shake Shack grew from one location to hundreds of "Shacks."

2. Shake Shack's logo, shown below, uses a typeface called Neutra, which is not protectable under U.S. copyright law and resides in the public domain. The Neutra typeface was developed in the 1930s by architect Richard Neutra.

1

# SHAKE SHACK

3.      Under U.S. copyright law, typefaces are not protectable.  Rather, "typeface is an industrial design in which the design cannot exist independently and separately as a work of art." *Eltra Corp. v. Ringer*, 579 F.2d 294, 298 (4th Cir. 1978); *see also* 37 C.F.R. § 202.1(e) (identifying typeface as a material expressly not subject to copyright).

4.      To use a particular typeface on a computer or other digital platform, the typeface may be incorporated into software that is readable by a computer program, such as a word processing program.  Font "foundries" like House are in the business of developing such software.  House purportedly created such a software program and included the public domain Neutra typeface in such software, renaming it "Neutraface."

5.      House's software allows users to generate characters on their computer screens that look like the Neutra typeface.  And, depending on how the font foundry created the software, it could potentially secure copyright protection and require licenses—but *only* for the hand-coded source code that comprises the software.  Any possible copyright protection afforded to such software does ***not*** cover the typefaces that are output from that software.  In other words, any copyright interest in the software code does not cover typeface.

6.      Even if House, therefore, has a copyright interest in the Neutraface font *software*, it has no copyright interest in, or legal basis to challenge, anyone else's (including Plaintiffs') use of Neutra typeface, including in Shack Shack's logo or signage or other designs that House unquestionably did not create.

7. Indeed, from 2004 to 2020, House did not complain about Shake Shack's logo or corporate iconography. Quite the contrary, House featured a photograph of a Shake Shack restaurant and sign on House's website, effectively using Shake Shack as a testimonial to advertise House's Neutraface font software.

8. But beginning in 2020, House turned from a Shake Shack cheerleader to a bully, seeking to shakedown Shake Shack for "license fees" to use the very signage and trademarks that Shake Shack developed nearly two decades ago, in which House has no legal interest, and which Shake Shack has notoriously and continuously used without complaint since.

9. Any right House may have is limited to the *computer code* for its software; its rights do not, as a matter of law, extend to Neutra itself or any other typeface. Plainly, Shake Shack's "Shacks" are not computer terminals and the Shake Shack signage does not use House's or anyone's computer code.

10. House's demands for compensation and purported licensing fees for Shake Shack's lawful use of the Neutra or any similar typeface, over which House has *no* copyright interest, amounts to an improper attempt to extend any purported *limited* control House may have in the original expression contained in its software to a broad monopoly over any typeface resembling one generated by House's software. This amounts to a blatant misuse of copyright, contrary to the law and public policy.

11. In fact, on information and belief, House has made a sub-industry out of twisting any limited copyright interests it may have in its software into a sweeping assertion of monopolistic rights over any typefaces generated by that software.

12. House is claiming, without any foundation, that Shake Shack is liable for significant licensing fees and damages and is threatening injunctive relief due to Shake Shack's significant

3

investment in global branding over the past two decades using a typeface squarely within the public domain.

13. Shake Shack owes House nothing. Nevertheless, House has threatened to sue Shake Shack for significant money damages. House also threatened to force Shake Shack to tear down its signage and disrupt Shake Shack's business at the hundreds of Shacks across the country.

14. Shake Shack, therefore, seeks a declaratory judgment to remove the cloud that House has cast over Shake Shack's restaurant business through House's unfounded demands.

15. In addition, Shake Shack seeks a declaratory judgment of copyright misuse to preclude House from asserting any claim of infringement against Shake Shack, or extracting any compensation for any purported licensing, based on Shake Shack's use of the Neutra typeface.

## THE PARTIES

16. Plaintiff Shake Shack Enterprises, LLC is a New York limited liability company having a principal place of business at 225 Varick Street, Suite 301, New York, NY 10014, and has been accused by Defendant of violating Defendant's non-existent rights in the Neutra typeface through the Shake Shack logo, signage, and other materials. Shake Shack Enterprises, LLC is an affiliate of Plaintiff SSE IP, LLC.

17. Plaintiff SSE IP, LLC is a Delaware limited liability company having a principal place of business at 225 Varick Street, Suite 301, New York, NY 10014, and is the owner of the trademarks identified in this action.

18. Upon information and belief, Defendant Brand Design Company, Inc. d/b/a House Industries is a Delaware corporation having a place of business at 1145 Yorklyn Road, P.O. Box 166, Yorklyn, Delaware 19736-0166.

## JURISDICTION AND VENUE

19. This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202.

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 2201 and 28 U.S.C. §§ 1331, 1338(a).

21. This Court has personal jurisdiction over House and venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Shake Shack resides and is being harmed in this District and a substantial portion of the activity about which Shake Shack complains has taken place in this District including, but not limited to, House's sending of demand letters and threats of litigation to Shake Shack in this District and accusing Shake Shack of infringing House's intellectual property rights in this District.  Further, House has purposefully availed itself of jurisdiction in this District by transacting and regularly doing business in this District, including selling and promoting products and services through its interactive website under the alleged copyrighted software that House asserts Shake Shack has infringed.  Venue is also proper because House is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### Shake Shack's Origins

22. Originally founded in 2001 by Danny Meyer's Union Square Hospitality Group, which owns and operates some of New York City's most acclaimed and popular restaurants—such as Union Square Cafe, Gramercy Tavern, and Maialino—the Shake Shack restaurant business began as a hot dog cart to support the rejuvenation of New York City's Madison Square Park through its Conservancy's first art installation "I ♥ Taxi."  The hot dog cart was an instant hit, with lines forming daily throughout the summer months for the next three years.  In response to this

success, New York City's Department of Parks and Recreation awarded Shake Shack a contract to create a permanent kiosk to anchor the park's future and, on June 12, 2004, Shake Shack officially opened its first permanent "SHAKE SHACK" location in Madison Square Park, as shown below.



23. Shake Shack offers a variety of food and beverage items in its restaurants, including burgers, chicken sandwiches, hot dogs, fries, shakes, and frozen custards. Currently, Shake Shack operates more than 400 fast-casual SHAKE SHACK restaurants in 32 states and the District of Columbia in the U.S. and in 14 countries internationally. There are 36 SHAKE SHACK restaurants in New York State, with 27 located in New York City.

**The SHAKE SHACK Mark**

24. Leading up to the June 2004 Madison Square Park opening, Shake Shack engaged renowned graphic designer Paula Scher of the preeminent, New York-based design firm Pentagram to design the signage, menus, and cups for the original Madison Square Park Shack.

25. Inspired by the lean, contemporary architecture of the Madison Square Park kiosk—itself a James Wines award-winning design—Ms. Scher used a "Neutra" typeface for the

SHAKE SHACK logo, including its signage. Neutra is a sans serif typeface, characterized by pointy peaks and a low-slung x-height. Its namesake, Richard Neutra, was an influential 1930s-era modernist architect known for popularizing the International Style of architecture in the United States, with rectilinear forms, clean, crisp lines, and open interior spaces. A hallmark of Richard Neutra's architecture was his use of a custom typeface on exterior signage of many of his commercial buildings.

26. Although the SHAKE SHACK logo incorporates the Neutra typeface, none of the signage or other uses of the SHAKE SHACK logo utilize House's Neutraface font software. Indeed, upon information and belief, Pentagram never provided Shake Shack with any font software in conjunction with its logo designs. Rather, as is standard in the design industry, Shake Shack received only "vector files" digitally representing the logo, which does not include any font software that may have been used to create the design. On information and belief, any further use of the design in creating and reproducing the SHAKE SHACK logo in signage and elsewhere leveraged those vector files (or derivatives of the vector files), not House's font software. Moreover, as noted above, the typeface of the SHAKE SHACK logo and merchandise is not protectable under U.S. copyright law regardless of how such typeface was created.

27. Since Ms. Scher created the Neutra-inspired design for the Shake Shack name and logo (collectively, the "SHAKE SHACK Mark"), Shake Shack has used it for its restaurant services, acquiring trademark rights in the SHAKE SHACK Mark.



28.     Plaintiff SSE IP, LLC owns several federal trademark registrations, among others, for the SHAKE SHACK Mark and related logos and designs on the Principal Register, including:

| MARK | REG. NO.<br>FILING DATE<br>REG. DATE | GOODS/SERVICES |
|---|---|---|
| SHAKE SHACK | Reg. No. 3725489<br>Filing Date: 5/22/2009<br>Reg. Date: 12/15/2009 | Restaurant Services |
| SHAKE SHACK | Reg. No. 3853559<br>Filing Date: 3/5/2010<br>Reg. Date: 7/28/2010 | Restaurant Services |
| SHAKE SHACK | Reg. No. 3853578<br>Filing Date: 3/12/2010<br>Reg. Date: 9/28/2010 | Restaurant Services |
| SHAKE SHACK | Reg. No. 5578084<br>Filing Date: 2/13/2017<br>Reg. Date: 10/9/2018 | Restaurant Services |
| SHAKE SHACK | Reg. No. 5578083<br>Filing Date: 2/13/2017<br>Reg. Date: 10/9/2018 | Restaurant Services |

29.     The registrations listed above, including the first mark using the Neutra typeface, were published for opposition (with no opposition by House) and subsequently registered by the United States Patent and Trademark Office in 2009. The registrations are valid and subsisting and

constitute prima facie evidence of, and those registrations that are incontestable constitute conclusive evidence of, Shake Shack's ownership of and exclusive rights to use the SHAKE SHACK Mark for the services recited in those registrations. Shake Shack also owns common law trademark rights in its various trademarks and logos.

30. Upon information and belief, House has been aware of the SHAKE SHACK Mark and its use of the Neutra typeface for many years without claiming infringement or asserting any purported intellectual property rights over the use of the Neutra typeface in the SHAKE SHACK Mark until very recently. House even prominently used the SHAKE SHACK Mark on its website without Shake Shack's consent to promote the Neutraface font software, as shown in the example below with the caption "Neutraface makes a statement at New York's Shake Shack," representing to potential consumers of House's Neutraface font software that the software was used in creating the SHAKE SHACK Mark.



31. On information and belief, House made such use of the SHAKE SHACK Mark on its website for several years, including from 2009 through at least 2016. House never objected to Shake Shack's use of the Neutra typeface during that time.

### House's Repeated Threats of Litigation

32. On June 26, 2020, sixteen years and 300-plus Shacks after the launch of the SHAKE SHACK Mark, House objected to Shake Shack's use of the SHAKE SHACK Mark based on House's alleged rights in the Neutraface font software.

33. As stated in its June 26, 2020 letter, House claims that "[Shake Shack] has, without a proper license or other authority, misappropriated, infringed on and otherwise misused House Industries' valuable and proprietary fonts in its Neutraface collection . . . including . . . for multiple logos, store signage and various merchandise . . . ." The letter requested a "commercial resolution of this matter both retroactively and prospectively," and concluded with House reserving all "rights or remedies in connection with these matters."

34. Over the course of several months, the parties unsuccessfully attempted to resolve the dispute. On June 2, 2021, House sent another letter to Shake Shack, demanding retroactive and prospective licensing fees—notwithstanding the absence of any legitimate copyright or other interest in Shake Shack's logo, signage, and merchandise. House's letter stated, among other things, that in the event House needed to commence legal action against Shake Shack, House would "assert various claims for relief, including but not limited to those arising under copyright law, and has the right to seek injunctive relief to prevent Shake Shack from continuing to use its logo and all other materials containing or derived from Neutraface." House, moreover, pointed to the alleged "magnitude of the infringement liability at issue should this matter proceed to litigation," and informed Shake Shack that should it reject House's proposal, "[House] will have

no choice but to both demand that Shake Shack immediately stop using Neutraface and all content and materials derived therefrom (e.g., restaurant signage, food packaging, etc.), and to commence litigation against Shake Shack . . . to recover all damages and pursue all remedies available, including recovery of attorneys' fees pursuant to statute." House again reserved all rights and remedies.

35. On November 1, 2021, House informed Shake Shack's counsel that "[u]nless you advise us that your client is amenable to paying a license fee for its prospective use of House's fonts – which all of House's clients and settling infringers do as a matter of course – then we have nothing left to discuss and will instead focus on litigation, inclusive of the issuance of a cease and desist requiring Shake Shack to immediately stop using its logo and other materials that include House's fonts." House concluded by stating "[i]f we do not receive a realistic offer by the end of the week [i.e., by November 5, 2021] which would necessarily include a prospective licensing fee, we will assume the matter cannot be settled and will move forward as deemed appropriate."

36. Notwithstanding Shake Shack's attempts to resolve this matter, House has rejected such attempts and repeatedly threatened to sue Shake Shack for unfounded copyright infringement claims and injunctive relief. The parties last spoke on November 11, 2021. House was required to respond by the following week if it was interested in a mutually agreeable resolution, but instead stonewalled Shake Shack's resolution attempts and now continues to dangle the threat of litigation over Shake Shack's head.

37. After remaining silent for over ten months, House again wrote to Shake Shack on August 18, 2022 in what it claimed was its "final effort to resolve House Industries and Shake Shack's dispute[.]" House repeated its baseless and unsubstantiated claims that Shake Shack "utiliz[ed] House Industries' intellectual property without authority . . . over 18 years and through

11

the present including for brand identity such as Shake Shack's logo and store signage" and invoked "Shake Shack's large annual revenue" and "large number of widespread Shake Shack locations" as its purported justification to demand: (1) payment for all purported "prior unauthorized use" and (2) that Shake Shack enter into a license agreement with House for Shake Shack's "desired prospective uses" of its own logo with its Neutra-inspired font for Shake Shack's products and services worldwide. As before, House reserved its rights, claims and legal positions.

38. As a result of House's repeated litigation threats and the other circumstances surrounding those threats, an actual, present and justiciable controversy has arisen between House and Shake Shack regarding Shake Shack's use of the Neutra-inspired typeface.

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment of Non-Infringement

39. Shake Shack repeats and realleges each and every allegation set forth above.

40. House has asserted that Shake Shack's use of its SHAKE SHACK Mark and other Shake Shack signage and merchandise as described above infringes upon and/or violates House's alleged rights, including alleged copyright interests, in its Neutraface font software, and has threatened to bring a lawsuit against Shake Shack on this basis.

41. Shake Shack's use of a Neutra-inspired typeface, however, is not an unauthorized use of House's Neutraface font software, which software Shake Shack has never obtained, copied, distributed, or used in any way.

42. An actual, present, and justiciable controversy has arisen between House and Shake Shack concerning Shake Shack's use of its SHAKE SHACK Mark and other Shake Shack signage and merchandise in connection with its SHAKE SHACK restaurant business including, but not limited to, use of the Neutra typeface in connection with Shake Shack's restaurant signage, menu items, websites, and other products.

43. Shake Shack seeks a declaratory judgment that its use of the Neutra typeface in connection with the SHAKE SHACK Mark and other Shake Shack signage and merchandise, as described above, do not infringe House's alleged rights, including any copyright, in its Neutraface font software, and does not otherwise violate any of House's alleged copyright interests under 17 U.S.C. § 101 *et seq.*

44. Under 17 U.S.C. § 505, Shake Shack is entitled to recover its attorney's fees and the full costs of this action.

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment of Copyright Misuse

45. Shake Shack repeats and realleges each and every allegation set forth above.

46. House has asserted that Shake Shack's use of its SHAKE SHACK Mark and other Shake Shack signage and merchandise as described above infringes upon and/or violates House's alleged rights, including alleged copyright interests, in its Neutraface font software, even though Shake Shack has never used that software.

47. Thus, House is attempting to use its limited copyright interest in its font software to exert a monopoly over all uses of the Neutra typeface, which is not protected by copyright.

48. These actions constitute copyright misuse: an attempt to monopolize the legitimate use of a typeface in the public domain, contrary to public policy and the limited exclusive right to original expression granted under 17 U.S.C. § 101 *et seq.* and the United States Constitution Art. I, § 8, cl. 8.

49. An actual, present, and justiciable controversy exists between House and Shake Shack concerning the SHAKE SHACK Mark and other Shake Shack signage, merchandise and other materials in connection with its restaurant business including, but not limited to, use of the

Neutra typeface in connection with Shake Shack's restaurant signage, menu items, websites, and other materials, goods and services.

50. Shake Shack seeks a declaratory judgment that House's threatened or purported enforcement of an exclusive right to the Neutra typeface against Shake Shack in connection with the SHAKE SHACK Mark and other Shake Shack signage and merchandise, as described above, constitutes copyright misuse, precluding any purported infringement claim by House against Shake Shack under 17 U.S.C. § 101 *et seq.*, based on the use of the Neutra typeface.

51. Under 17 U.S.C. § 505, Shake Shack is entitled to recover its attorney's fees and the full costs of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Shake Shack prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A. An Order declaring that Shake Shack's use of the SHAKE SHACK Mark, including the typeface and/or font used for the SHAKE SHACK Mark, and Shake Shack's use of any typeface or font in connection with its SHAKE SHACK restaurants, including in other Shake Shack signage and merchandise, do not infringe upon, impair, or violate any federal, state, or common law rights, including any copyright interest, that House may have or alleges to have in the Neutraface font software;

B. An Order declaring that House's threatened or purported enforcement of an exclusive right to the Neutra typeface with respect to Shake Shack's use of the SHAKE SHACK Mark, including the typeface and/or font used therein, and Shake Shack's use of any typeface or font in connection with its restaurants, including in other signage, merchandise and other physical

collateral, constitutes copyright misuse, precluding any purported infringement claim by House against Shake Shack under 17 U.S.C. § 101 *et seq*, based on the use of the Neutra typeface;

C. An Order requiring House to pay Shake Shack's costs and attorney's fees in this action pursuant to 17 U.S.C. § 505 and other applicable statutes and laws;

D. An award of prejudgment and post-judgment interest according to law; and

E. Such other and further relief as the Court may deem appropriate, including without limitation all remedies provided for under any other applicable laws.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Shake Shack respectfully demands a trial by jury on all issues properly triable by a jury in this action.

Dated: September 9, 2022

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: */s/ Craig B. Whitney*
      Craig B. Whitney

Craig B. Whitney
Kristen G. Niven
28 Liberty Street
New York, New York 10005
Tel.: (212) 980-0120
cwhitney@fkks.com
kniven@fkks.com

Jeremy S. Goldman
2029 Century Park East
Los Angeles, CA 90067
Tel.: (310) 579-9600
jgoldman@fkks.com

*Attorneys for Plaintiffs*