UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAKE SHACK ENTERPRISES, LLC and SSE
IP, LLC,

                              Plaintiffs,

                – against –

BRAND DESIGN COMPANY, INC. d/b/a HOUSE
INDUSTRIES,

                              Defendant.

22 Civ. 7713 (VM)

**DECISION AND ORDER**

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED:__12/28/23__

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Shake Shack Enterprises, LLC and SSE IP, LLC (together "Shake Shack") brought this action against defendant Brand Design Company, Inc. d/b/a House Industries ("House Industries"). The Complaint seeks (1) declaratory judgment that the style of lettering in Shake Shack's logos, signage, and merchandise does not infringe on House Industries' intellectual property rights, and (2) declaratory judgment that House Industries has engaged in copyright misuse by attempting to monopolize the legitimate use of a typeface in the public domain. (See "Complaint," Dkt. No. 1.) House Industries filed an answer and a counterclaim against Shake Shack, alleging that Shake Shack breached a contract with House Industries, related to unauthorized use of one of House Industries' Neutraface font in logos and signage. (See "Counterclaim," Dkt. No. 13.)

Now pending before the Court is Shake Shack's motion to dismiss House Industries' Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See Dkt. No. 22.) For the reasons set forth below, Shake Shack's motion to dismiss the Counterclaim is **GRANTED** with prejudice.

## I.    BACKGROUND[1]

A.    FACTS

As alleged or admitted in the Counterclaim, House Industries is a typeface foundry that develops proprietary fonts and provides custom design services, including the creation of logos and branding. (See Counterclaim ¶¶ 14-15.) In 2002, House Industries developed the Neutraface font, which was inspired by and named for the Modernist architect Richard Neutra.[2] (See id. ¶¶ 15, 20.) House Industries developed Neutraface over the course of "several years," expending "thousands of hours." (Id. ¶ 17)

---

[1]  Except as otherwise noted, this factual background derives from the Counterclaim and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss.

[2]  Though the words "font" and "typeface" may be casually interchanged in everyday conversation, these are distinct terms of art in the world of intellectual property. "A typeface is the artistic creation," but a "font is the result of an industrial process to enable the reproduction of typefaces in the printing process." J. Lipton, *To © Or Not to ©, Copyright & Innovation in the Digital Typeface Industry*, 43 U.C. DAVIS L. REV. 143, 148 (2009) (citing H.R. REP. 94-1476); see also Counterclaim ¶ 19. Whereas different typefaces will make individual characters (known as "glyphs") appear in one way or another, fonts are the software programs that convert text data into glyphs of a particular typeface.

House Industries makes its Neutraface font available to customers on the House Industries website. (<u>See</u> Counterclaim ¶ 18.) For a licensing fee, anyone can download the Neutraface font software, which enables the downloader to create text on a computer in the Neutraface typeface. The downloader must also agree to House Industries' End User License Agreement ("EULA"), the standard "Desktop" version of which delineates the specific uses for which the Neutraface font software and its resulting glyphs may be used by the downloader. (<u>Id.</u> ¶ 19.)

Though House Industries changes the exact terms of its standard Desktop EULA from time to time, House Industries alleges that, since 2002, the standard Desktop EULA has consistently forbidden users from using the Neutraface font software or the glyphs it generates "in connection with logos" or "products for sale." (<u>Id.</u>) House Industries imposes this restriction so that it can retain "control over" the usage and value of the fonts it has developed. (<u>Id.</u>) If a customer wishes to use the glyphs created by the Neutraface font in connection with a logo or goods for sale, the customer must first license the Neutraface font from House Industries for that specific purpose. (<u>See</u> <u>id.</u> ¶ 20.)

3

The Court understands House Industries' Counterclaim to further allege that there is just one way to produce digital text in the Neutraface typeface: by using House Industries' Neutraface font software. (See id.; see also House Industries' Opposition to Motion to Dismiss ("Opp.," Dkt. No. 25, at 8).)

House Industries alleges that Shake Shack has repeatedly used House Industries' proprietary Neutraface font software for logos, advertising, and sales, without having obtained permission for those specific uses, thereby violating the Desktop EULA. Specifically, according to House Industries, Shake Shack has created the following signage through the unauthorized use of the Neutraface font software: (1) Shake Shack's "innovation kitchen" signage since September 2018 (see Counterclaim ¶¶ 22-24); (2) Shake Shack's "drive thru" signage since December 2021 (see id. ¶¶ 26-29); and (3) Shack Shack's "APP+ONLINE PICK-UP," "SHACK bar," and "SHAKE SHACK bar" signage since 2017 (see id. ¶ 30).

Other than alleging on information and belief that "one or more of Shake Shack's employees, agents, or representatives acting on Shake Shack's behalf obtained access to House [Industries'] Neutraface software," House Industries does not purport to know how or when Shake Shack

4

obtained the Neutraface font. (Id. ¶ 32; see also Opp. at 9.) Nonetheless, House Industries claims that Shake Shack is bound by the EULA and indeed breached the EULA by using the Neutraface font software to generate logos and other materials promoting goods for sale. (See Counterclaim ¶ 31.)

B.   PROCEDURAL HISTORY

Shake Shack initiated this action on September 9, 2022, seeking declaratory judgment of non-infringement and declaratory judgment of copyright misuse. (See Complaint.) House Industries filed its Answer and Counterclaim on November 16, 2022, bringing one count of breach of contract against Shake Shack. (See Counterclaim.) The parties then engaged in a pre-motion letter exchange regarding Shake Shack's anticipated motion to dismiss House Industries' Counterclaim. (See Dkt. Nos. 17-18.) Shake Shack informed the Court that House Industries had declined Shake Shack's request to withdraw or amend the Counterclaim. (See Dkt. No. 19.)

In light of the parties' failure to avoid motion practice, the Court determined that a pre-motion conference was unnecessary and directed the parties to inform the Court whether they sought supplemental or full briefing. (See Dkt. No. 20.) The parties requested full briefing. (See Dkt. No.

21.) Shake Shack filed its motion and a supporting memorandum of law (see Dkt. Nos. 22, 23), which were followed by House Industries' memorandum in opposition to the motion to dismiss (see Opp.), and Shake Shack's reply memorandum in further support of the motion to dismiss. (See Dkt. No. 26.)

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, a complaint should not be dismissed when the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Still, a plaintiff "must allege some factual basis from which to make those inferences" of liability, In re Actos End-Payor Antitrust Litig., 848 F.3d 89, 99 (2d Cir. 2017), because "conclusory allegations are not entitled to the assumption of truth," Francis v. Kings Park Manor, Inc., 992 F.3d 67, 72 (2d Cir. 2021) (en banc).

A Rule 12(b)(6) motion challenges only the legal feasibility of the complaint, and courts adjudicating such motions "take[] no account of the complaint's 'basis in evidence.'" Nunes v. NBCUniversal Media, LLC, 643 F. Supp. 3d 403, 411 (S.D.N.Y. 2022) (quoting Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016)). "Generally, courts do not look beyond facts stated on the face of the complaint, documents incorporated in the complaint, matters of which judicial notice may be taken and documents that are 'integral' to the complaint." Id. (quoting Goel, 820 F.3d at 559). At the same time, the Rule 12(b)(6) standard instructs the Court to construe the complaint "liberally." In re Inclusive Access Course Materials Antitrust Litig., 544 F. Supp. 3d 420, 431 (S.D.N.Y. 2021) (quoting Coal. for Competitive Elec. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018)).

### III. DISCUSSION

Shake Shack argues that House Industries has failed to include plausible, non-speculative allegations in its Counterclaim sufficient to state a claim for breach of contract. Shake Shack also argues that House Industries' contract claim is expressly preempted by the Copyright Act. The Court finds both arguments convincing and addresses each in turn.

A.    EXISTENCE OF THE CONTRACT

To state a claim for breach of contract under New York law, a plaintiff must allege "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011); see Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009). Shake Shack argues that House Industries has not pleaded facts to meet the first element: the existence of a contract between the parties. The Court agrees.

A contract plaintiff "must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract." Fuji Photo Film, 669 F. Supp. 2d at 412; see also Berman v. Sugo LLC, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (dismissing claims because they "do not set forth a single fact relating to the formation of the contract, the date it took place, the contract's major terms, the parties to the contract, or [defendant's] assent to its terms"); Ebomwonyi v. Sea Shipping Line, 473 F. Supp. 3d 338, 348 (S.D.N.Y. 2020) (dismissing claims because complaint alleged only a "promise[] to pay" without detailing the

parties to the contract or how or when such contract was formed); <u>Silverman v. 3d Total Solutions, Inc.</u>, 18 Civ. 10231, 2019 WL 4248040, at *17 (S.D.N.Y. Sept. 9, 2019) (dismissing claim because the complaint "fails to allege any facts surrounding the formation of the contract"); <u>Eaves v. Design for Finance, Inc.</u>, 785 F. Supp. 2d 229, 258-59 (S.D.N.Y. 2011) (dismissing claims because pleadings "fail to provide facts regarding any specific contract between the parties, how or when such contract was formed, or any terms of the contract"); <u>Window Headquarters, Inc. v. MAI Basic Four, Inc.</u>, 91 Civ. 1816, 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993) (similar).

The details of Shake Shack's assent to the EULA — particularly, who gave it, and when — are entirely lacking from House Industries' Counterclaim. Indeed, House Industries admits that it "has not been able to locate a license that specifically identifies 'Shake Shack' as the licensee" in its own records. (Opp. at 9.) It therefore does not identify the date the contract was formed, the language of the EULA at issue, the major terms of the EULA, the identity of the person who entered into the EULA on Shake Shack's behalf, or any reason to believe why that person had the authority to bind Shake Shack to any version of the EULA.

House Industries instead asks the Court to draw several inferences to conclude that Shake Shack was party to some version of the EULA, the specifics of which House Industries expects to unearth in discovery. House Industries argues that the Court can draw this conclusion based on the following allegations: (1) it is impossible to obtain Neutraface except through House Industries' website, (2) all users who download Neutraface from the House Industries website must agree to the standard Desktop EULA, and (3) Shake Shack's signage uses glyphs that are almost identical to the Neutraface glyphs. (See id. at 5-6.) Therefore, says House Industries, one of Shake Shack's many agents and employees must have downloaded the Neutraface font software, agreed to the Desktop EULA, and violated the Desktop EULA by incorporating Neutraface glyphs into Shake Shack's logos and signage. (See id. at 6-7.)

That allegation does not set forth a reasonable inference that can be assumed true based on the facts pleaded in the Counterclaim. It is speculation to assert that Shake Shack created its signage with glyphs generated by House Industries' software. Even if the glyphs in Shake Shack's signage are identical to the Neutraface glyphs, typeface is part of the public domain. See 37 C.F.R. § 202.1(e) (prohibiting copyright registration of "[t]ypeface as

10

typeface"); <u>Eltra Corp. v. Ringer</u>, 579 F.2d 294, 298 (4th Cir. 1978) (typeface not subject to copyright protection); <u>see</u> <u>generally</u> B. Fry, *Why Typefaces Proliferate Without Copyright Protection*, 8 J. ON TELECOMMS. & HIGH TECH. L. 425 (2010). The public is free to replicate, imitate, or reverse engineer Neutraface glyphs to create glyphs of identical appearance, as long as House Industries' software is not used to do so.[3] That House Industries' Neutraface font software is one way to generate those glyphs does not support the conclusion that it is, in fact, how Shake Shack generated those glyphs for its signage. With no facts in the Counterclaim tying Shake Shack to the Neutraface font software, House Industries has pleaded the mere possibility, but not the plausibility, that a contract exists between the parties. This is not enough to survive a motion under Rule 12(b)(6). <u>See Iqbal</u>, 556 U.S. at 679; <u>Actos</u>, 848 F.3d at 99 (on a 12(b)(6) motion, "[p]laintiffs are due all reasonable inferences, but they must allege some factual basis from which to make those inferences").

---

[3] House Industries admits as much in its argument on preemption under the Copyright Act: "If, for example, Shake Shack or its agents created the signage in question without using the software (through hand tracing or independent creation, as Shake Shack suggests is somehow possible), then House's claims will fail." (Opp. at 13.) Neither House Industries' pleading nor its briefing informs the Court why independent recreation of those glyphs would be impossible. (<u>See</u> <u>id.</u>)

Moreover, the Counterclaim suffers from an additional, unusual flaw: It does not identify the EULA language on which Shake Shack's liability is to be grounded, nor does it identify the version of the EULA to which Shake Shack is bound. House Industries cannot state a breach-of-contract claim without such details. See Hudson Neurosurgery, PLLC v. UMR, Inc., No. 20 Civ. 9642, 2022 WL 902107, at *4 (S.D.N.Y. Mar. 28, 2022) (dismissing contract claim where "[p]laintiffs do not even identify the document which allegedly constitutes the contract"); Negrete v. Citibank, N.A., 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) (in the Second Circuit, "plaintiffs must at least allege which agreement was breached").

House Industries does allege that, when it filed its Counterclaim in November 2022, the then-current version of the Desktop EULA clearly prohibited use of the Neutraface font software to generate glyphs that would be used for commercial purposes; it also alleged all prior versions of the Desktop EULA contained a similar provision. (See Counterclaim ¶ 19.) For the purpose of ruling on the underlying claims, the Court accepts these allegations as true. Yet by pleading the existence of a contract in this way — that is, by pleading the substantive effect of the contract but not the language of the contract itself — House Industries

12

did not fairly put Shake Shack on notice of the nature of the contract claim. Without knowing which contract it is alleged to have violated, Shake Shack has no way of knowing what defenses it may be afforded under that contract, or even how its conduct violated the terms of the contract in the first instance. See Negrete, 187 F. Supp. 3d at 468. Such ambiguous pleading does not satisfy the requirements of Federal Rule of Civil Procedure 8 and cannot be sustained over a Rule 12(b)(6) motion. See id.; see also Iqbal, 556 U.S. at 678.

House Industries attempts to overcome this deficiency by asking the Court to credit the theory, alleged in the Counterclaim on information and belief, that a Shake Shack agent or employee of unknown identity "likely entered into" a binding agreement with House Industries on Shake Shack's behalf. (Opp. at 9; see Counterclaim ¶¶ 31-32). The Court does not credit such information-and-belief pleadings because they are merely conclusions that assume the existence of the alleged contract. See Citizens United v. Schneiderman, 882 F.3d 374, 384-85 (2d Cir. 2018) (observing that pleadings can be conclusory even if they follow the words "information and belief"); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010).

13

In Arista Records, information-and-belief pleadings were sufficient to state a claim against unidentified "Doe" defendants for copyright infringement. In particular, the plaintiff did not know the identity of the infringers by name. Rather, the plaintiff knew identifying characteristics about the infringers, namely the infringers' internet protocol ("IP") addresses, which were alleged as facts in the complaint. See 604 F.3d at 121. By comparison, House Industries' Counterclaim alleges no information (for instance, a name or an IP address) about the person who allegedly entered into the EULA that House Industries seeks to enforce against Shake Shack, except that this person was one of the "nearly 10,000 employees who may have licensed and downloaded the font." (Opp. at 9.)

This argument is particularly deficient where, as here, House Industries purports to be one of the original signatories to the contract it wishes to enforce. There is no factual or legal basis to conclude that the identity of the Shake Shack employee or agent who assented to the alleged contract constitutes a fact peculiarly within Shake Shack's possession if House Industries was present when the contract was formed. To the extent House Industries contends that Shake Shack directed one of its employees or agents to download the

14

Neutraface software and enter into the EULA under a personal name so that Shake Shack could avoid paying licensing fees to House Industries (see id.; Counterclaim ¶¶ 31-32), that version of events is unsupported by facts alleged in the Counterclaim, and the Court is not bound to accept such a conclusory contention as true. See Actos, 848 F.3d at 99.

Because House Industries has not sufficiently pleaded the existence of a binding contract with Shake Shack, its breach-of-contract claim fails. The Counterclaim therefore does not state a claim upon which relief can be granted, and the Court can dismiss the Counterclaim on that basis alone.

B.   PREEMPTION UNDER THE COPYRIGHT ACT

Even if House Industries' Counterclaim sufficiently pleaded a breach-of-contract claim, that claim still must be dismissed as preempted by the Copyright Act. The Court must dismiss any state-law claim that asserts "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by [17 U.S.C.] section 106" in works of authorship that "come within the subject matter of copyright as specified by [17 U.S.C.] sections 102 and 103." 17 U.S.C. § 301; see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004); Nat'l Basketball Ass'n v. Motorola, Inc., 105

F.3d 841, 848-49 (2d Cir. 1997) [hereinafter "NBA"]. The preemption analysis proceeds in two steps: first, the Court must determine whether the claim concerns a type of work described in section 102 or 103 of the Copyright Act, and second, the Court must determine whether the claim asserts one of the exclusive rights granted to copyright owners under section 106 of the Copyright Act.

The Court finds that the Counterclaim is, indeed, preempted. House Industries' claim for breach of contract attempts to regulate graphic or pictorial works of authorship within the general subject matter of copyright — namely, the Neutraface glyphs. The claim further attempts to control Shake Shack's reproduction and public display of those glyphs, which are exclusive rights granted by section 106 of the Copyright Act.

1.   Subject Matter of Copyright

A claim is subject to the possibility of statutory preemption if it attempts to vindicate rights against a "work of authorship" within the "subject matter of copyright" as those terms are defined in 17 U.S.C. § 102. In re Jackson, 972 F.3d 25, 42-43 (2d Cir. 2020); see ML Genius Holdings LLC v. Google LLC, No. 20-3113, 2022 WL 710744, at *2 (2d Cir. Mar. 10, 2022); see also 17 U.S.C. § 301. In turn, section 102

extends copyright protection to "original works of authorship
fixed in any tangible medium of expression" and proceeds to
list "pictorial" and "graphic" works as categories included
within that definition. Id. § 102(a)(5); see Jackson, 972
F.3d at 42-43. The Copyright Act further defines pictorial
and graphic works, together, to include "fine, graphic, and
applied art." 17 U.S.C. § 101.

In analyzing the subject-matter prong of copyright
preemption, the Court is to focus "on the gravamen of the
claim and the allegations supporting it." Jackson, 972 F.3d
at 47; see also ML Genius Holdings, 2022 WL 710744, at *2.
The gravamen of House Industries' Counterclaim is that Shake
Shack has wrongfully used Neutraface glyphs in public-facing
signage and logos. (See Counterclaim ¶ 2.) Though House
Industries characterizes its Counterclaim as a breach-of-
contract case centered around a software license, this
characterization is difficult to accept. (See Opp. at 10.)
House Industries finds Shake Shack's alleged use of the
Neutraface software objectionable only because Shake Shack
has used in signs and logos the glyphs allegedly created by
the software. (See id. ("[The Counterclaim] involves the use
of the software *to create glyphs*." (emphasis added)); id.
("House Industries' Counterclaim *is based on use of the glyphs*

17

created by the [software]." (emphasis added)); Counterclaim
¶ 31 ("[T]his signage was created through the unauthorized
use of House's proprietary software and *the glyphs generated
thereby*[.]" (emphasis added)).) Further, the sole allegation
in the Counterclaim that connects Shake Shack to the
Neutraface software is that Shake Shack uses glyphs in its
public-facing materials with a strong resemblance to the
Neutraface glyphs. House Industries has pleaded no details
whatsoever concerning Shake Shack's alleged use of the
proprietary software. The Court accordingly focuses on Shake
Shack's use of the glyphs as the gravamen of the Counterclaim.

Next, the Neutraface glyphs are pictorial or graphic
works, and they fall within the subject matter of copyright.
Though it is not this Court's role to opine on exactly what
is (or is not) art, "[t]hat a typeface design may constitute
a work of art seems hardly open to question." 1 Nimmer on
Copyright, § 2.15 (2023). The Neutraface glyphs have a
specific "style of . . . lettering" and a "scale and design"
that House Industries describes as uniquely impossible to
recreate. (Opp. at 8.) Neutraface has a certain aesthetic of
"sophistication and clean architectural lines," and is found
within House Industries' "fun, hand-crafted, design-driven"
portfolio of works. (Counterclaim ¶¶ 14, 16.) The Court is

satisfied that typeface glyphs constitute a work of pictorial or graphic art within the meaning of 17 U.S.C. sections 101 and 102.

House Industries attempts to resist this conclusion on the basis that "[t]ypeface as typeface" is not subject to copyright protection under 37 C.F.R. § 202.1(e). (See Opp. at 11-12.) Though 37 C.F.R. § 202.1(e) excludes typefaces from the ambit of copyright protection, it does not follow that typefaces fall entirely outside the subject matter of copyright for purposes of statutory preemption.

"The scope of copyright for preemption purposes . . . extends beyond the scope of available copyright protection." Forest Park Pictures v. Universal TV Network, Inc., 683 F.3d 424, 429-30 (2d Cir. 2012); NBA, 105 F.3d at 849 ("As long as a work fits within one of the general subject matter categories of sections 102 and 103, [section 301] prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain." (quoting H.R. REP. 94-1476 at 131)); see also Briarpatch, 373 F.3d 296 at 305 (holding the work at issue "need only fit into one of the copyrightable categories in a broad sense").

19

This conclusion follows because Congress, not the states, may decide which types of works are copyrightable and which others belong to the public domain. See Forest Park Pictures, 683 F.3d at 430. "[I]t would run directly afoul of one of the [Copyright] Act's central purposes to allow the states to expand copyright protection to works Congress deemed uncopyrightable." Id. (quotation marks omitted) (quoting Harper & Row Pub'rs, Inc. v. Nation Enters., 723 F.2d 195, 200 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985)); see also ML Genius Holdings, 2022 WL 710744, at *2 ("Section 301's preemption scheme functions properly only if the 'subject matter of copyright' includes all works of a type covered by sections 102 and 103, even if federal law does not afford protection to them."). The same logic applies here, where the glyphs at issue are within the protected general category of pictorial or graphic works, though they belong to a particular subset of those works left unprotected by the Copyright Act.

Though House Industries suggests (see Opp. at 11-12) that the Third Circuit reached a different conclusion in Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 217 (3d Cir. 2002), the Court does not agree and in any case is bound by the applicable precedent of the

Second Circuit. There, the Third Circuit held that state-law misappropriation claims concerning stolen customer lists were not preempted by the Copyright Act because customer lists are not original works of authorship. See id. at 219 (citing Feist Pubs., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 347 (1991), for the proposition that compiled facts are not within the subject matter of copyright "because they are not original in the constitutional sense"). The holding in Dun & Bradstreet with respect to unoriginal customer lists being outside the constitutional scope of copyright is not instructive in the circumstances here, where the glyphs at the heart of this case are pictorial or graphic works but are nonetheless relegated to the public domain pursuant to the policy judgments of Congress and the United States Copyright Office.

House Industries also cites (see Opp. at 11-12) a favorable decision it obtained in the United States District Court for the Eastern District of Pennsylvania concerning the allegedly unlawful use of the Neutraface font software to create the logo for Rite Aid. See Brand Design Co., Inc. v. Rite Aid Corp., 623 F. Supp. 3d 526 (E.D. Pa. 2022) [hereinafter "Rite Aid"]. The Court in Rite Aid, 623 F. Supp. 3d at 534-35, held that House Industries' claims for alleged breaches of licensing agreements with Rite Aid were not

preempted by the Copyright Act, relying on Dun & Bradstreet, 307 F.3d at 219, and Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1027-28 (3d Cir. 2008).

In Facenda, a claim under Pennsylvania's right-of-publicity statute was not preempted when a sound recording of famed sports announcer John Facenda was reproduced in a film series; the Third Circuit reached this conclusion because "a voice is not copyrightable" and therefore outside the subject matter of copyright, even if the sound recordings of the voice were. 542 F.3d at 1027-28.

This doctrine, sometimes called partial preemption, has been squarely rejected by the Second Circuit. NBA, 105 F.3d at 848. In particular, where copyrightable material "contains uncopyrightable elements," the Copyright Act bars state-law claims "with respect to uncopyrightable as well as copyrightable elements," assuming that the other conditions for preemption have been satisfied. NBA, 105 F.3d at 849; see also ML Genius Holdings, 2022 WL 710744, at *2. In NBA, the plaintiff (that is, the NBA) complained that a newsgathering organization engaged in unfair competition by republishing basketball game scores from copyrighted television broadcasts. See 105 F.3d at 833-34; id. at 846. Because the scores were transmitted by copyrighted television broadcast,

state law was preempted to the extent it controlled reproduction of those scores, even though the scores themselves embodied factual information not subject to copyright. See id. at 848-49.

Despite the strong factual similarities between this case and Rite Aid, this Court cannot reach the same conclusion as in Rite Aid and must instead follow the binding and instructive precedent from the Second Circuit on the relevant issues. When Neutraface glyphs are used in a particular way – "as typeface" (37 C.F.R. § 202.1(e)) – they cannot be the basis of a copyright infringement suit. However, it does not follow that the Neutraface glyphs fall outside the broad subject matter of copyright as defined by the Second Circuit.

2.   Equivalence of Claims

Having found that the Neutraface glyphs fall within the subject matter of copyright, the Court now considers whether House Industries' contract claim asserts "legal or equitable rights that are equivalent to any of the exclusive rights" enumerated in the Copyright Act, among them the rights to reproduce or publicly display the copyrighted work. 17 U.S.C. § 301; see also id. § 106(1); id. § 106(5). The Court finds that it does and that House Industries' contract claim must therefore be dismissed as preempted.

"The focus of the 'equivalency' analysis is on whether the 'nature' of a state law action 'is qualitatively different from a copyright infringement claim.'" <u>Jackson</u>, 972 F.3d at 53 (quoting <u>Computer Assoc. Int'l, Inc. v. Altai, Inc.</u>, 982 F.2d 693, 716 (2d Cir. 1992)); <u>see also</u> <u>IBM Corp. v. Micro Focus (US), Inc.</u>, --- F. Supp. 3d ----, 2023 WL 3902955, at *9 (S.D.N.Y. Jun. 8, 2023). Like the subject-matter requirement, a court must look to the "gravamen" of the claim subject to preemption. <u>IBM Corp.</u>, 2023 WL 3902955, at *9. Stated differently, "[t]o determine whether a claim is qualitatively different, we look at what the plaintiff seeks to protect, the theories in which the matter is thought to be protected[,] and the rights sought to be enforced." <u>New London Assoc., LLC v. Kinetic Social LLC</u>, 384 F. Supp. 3d 392, 411 (S.D.N.Y. 2019).

The gravamen of House Industries' claim, in this respect, revolves around the "Prohibited Uses" found in its standard EULA: "use of the font software and the glyphs generated thereby is not permitted in connection with logos, products for sale, product packaging, [or any] advertising, among other[s]." (<u>See</u> Counterclaim ¶ 19 (emphasis omitted).) More particularly, House Industries finds Shake Shack's "in-

24

store and exterior" signage objectionable and cites numerous examples thereof. (See id. ¶¶ 22, 23, 27, 28, 30.)

There is no qualitative difference between use "as a logo" or "in signage" (id.; see Opp. at 13) and "public display" (17 U.S.C. § 106(5)) of Neutraface glyphs. Logos and business signage are meant to advertise products and, by their nature, are public displays or integrated into public displays.[4] The alleged contract embodies the rights to control public display of Neutraface glyphs that House Industries would otherwise enjoy under section 106 of the Copyright Act (assuming, of course, the absence of 37 C.F.R. § 202.1(e)).

To avoid preemption, House Industries argues (see Opp. at 12-14) that it can show the inequivalence between its contract claim and a copyright infringement claim if it can show that its contract claim requires proof of an "extra element" that a copyright infringement claim would not require. See, e.g., Altai, 982 F.2d at 716. But the question whether contract claims are equivalent to copyright claims "does not lend itself to a bright-line rule" and requires

---

[4] See, e.g., Logo, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/logo ("[A]n identifying symbol (as for use in advertising)."); Signs, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/signs ("[A] display (such as a lettered board or a configuration of neon tubing) used to identify or advertise a place of business or a product.").

examination of the circumstances. <u>Canal+ Image UK Ltd. v.</u> <u>Lutvak</u>, 773 F. Supp. 2d 419, 444 (S.D.N.Y. 2011). Under these circumstances, none of House Industries' scattershot theories about the extra element required for its contract claim are convincing. The Court briefly addresses them now.

House Industries first contends that the use of its proprietary software is an essential element of its contract claim, setting it apart from copyright infringement claims, which ordinarily do not have such an element. (<u>See</u> Opp. at 12.) Yet when it comes to pleading Shake Shack's use of House Industries' software, House Industries' Counterclaim sounds in copyright law, not in contract, making it impossible to view the software usage as an extra element. As discussed above, House Industries does not identify contractual terms to which both parties assented and that Shake Shack violated. Rather, House Industries asks the Court to indulge a series of inferential leaps to conclude that a contract must exist between the parties, because the typeface in Shake Shack's logo is so similar to the typeface designed by House Industries that Shake Shack must have improperly downloaded Neutraface from House Industries' website at one point or another. (<u>See</u> Opp. at 5-6.) To support these inferences, House Industries displays the Shake Shack logos next to official

Neutraface-generated text in its Counterclaim and notes the evident similarity between the two. (See Counterclaim ¶¶ 23, 27, 28, 30.)

That argument underscores the qualitative similarities between House Industries' contract claim and an ordinary copyright infringement claim. In effect, House Industries asks this Court to make a "substantial similarity" inference — i.e., that unlawful reproduction has, in fact, occurred because the plaintiff's and the defendant's works look so similar. Reasoning of this type is foundational to copyright law. See, e.g., 4 Nimmer on Copyright § 13.03 (2023) (describing "substantial similarity" and its probative value in showing that copyright infringement has occurred); id. at § 13D.06 (same).

In this case, however, instead of asking the Court to infer actionable reproduction on the basis of similarity, House Industries asks the Court to infer the existence of an enforceable contract (controlling reproduction) on the basis of similarity. The Court cannot conclude that, as pleaded, the use of House Industries' software can supply an "extra element" sufficient to overcome preemption.

Next, House Industries attempts to cast as an extra element the "implied promise to pay . . . for Neutraface if

[Shake Shack's] use exceeds what is authorized by the EULA, including in a logo or signage." (Opp. at 13.) In support of this argument, House Industries relies on <u>Bill Diodato Photography LLC v. Avon Prods., Inc.</u>, 12 Civ. 0847, 2012 WL 3240428, at *8-9 (S.D.N.Y. Aug. 7, 2012), which involved use of copyrighted materials past a one-year licensing agreement. On reconsideration, the Court in <u>Bill Diodato Photography</u> emphasized the crux of the dispute was "not merely that Defendant used Plaintiff's works without Plaintiff's permission," but an express promise to revisit the terms of the licensing contract after one year. 12 Civ. 0847, 2012 WL 4335164, at *6 (S.D.N.Y. Sept. 21, 2012).

As explained above, the Court finds that the crux of House Industries' dispute is, indeed, Shake Shack's alleged use of House Industries' glyphs without permission. An "implied promise to pay" (Opp. at 13) differs from an express promise to conduct negotiations, as was central to the dispute in <u>Bill Diodato Photography</u> (2012 WL 4335164, at *6). And, even assuming a contract exists between the parties as House Industries alleges it does, the qualitative differences between a contract claim and a copyright infringement claim are, at best, minor where a defendant has "merely breached a

promise not to distribute copyrighted material." Canal+
Image, 773 F. Supp. 3d at 445.

House Industries finally attempts to show that the
commercial nature of the prohibited uses described in the
EULA — or, in other words, the connection between Neutraface
and the promotion of Shake Shack's business and products — is
what renders the contract claim here qualitatively
inequivalent to a copyright infringement claim. (See Opp. at
13-14.) This reasoning fails too. "Reliance on commercial
purpose for this distinction faces the problem that, while it
is true that a commercial motivation is not essential to a
copyright or a claim of infringement of copyright, commercial
interests have always played an enormous role in copyright
law." Jackson, 972 F.3d at 52. "Second Circuit precedent
establishes that a 'commercial purposes' element does not
sufficiently change the nature of a similar state law claim
so that it is qualitatively different from a copyright
infringement claim." Id. at 53-54 (cleaned up).

To summarize, the breach of contract claim asserted by
House Industries is preempted by section 301 of the Copyright
Act. The glyphs are graphic or pictorial works under section
102, even though they cannot be registered with the United
States Copyright Office or supply the basis for an

infringement   suit   for   policy   reasons   embedded   in   the
Copyright Act. See 37 C.F.R. § 202.1(e). And the breach-of-
contract claim that House Industries brings instead is not
qualitatively different from an infringement claim, and
therefore cannot avoid preemption under the Copyright Act.

　　　Accordingly,  Shake  Shack's  Motion  to  dismiss  House
Industries' Counterclaim is **GRANTED** with prejudice.

### IV.   ORDER

　　　For the reasons stated above, it is hereby

　　　**ORDERED** that the motion filed by plaintiff Shake Shack
Enterprises, LLC and SSE IP, LLC to dismiss (Dkt. No. 22) the
Counterclaim (Dkt. No. 13) of defendant Brand Design Company,
Inc. d/b/a House Industries pursuant to Rule 12(b)(6) of the
Federal Rules of Civil Procedure is **GRANTED** with prejudice.

　　　**SO ORDERED.**

Dated:　　　28 December 2023
　　　　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　Victor Marrero
　　　　　　　　　　　　　　　　　　　　U.S.D.J.

30